The Honorable Robert Johnson State Representative P.O. Box 173 Bigelow, Arkansas 72016
Dear Representative Johnson:
This official Attorney General opinion is rendered in response to your recent questions regarding competitive bidding for ambulance service in the City of Conway. More specifically, you have presented the following questions:
 (1) Is the City of Conway required to obtain competitive bids for exclusive franchises for ambulance service within its corporate limits?
 (2) If so, what are the procedures the city should follow in obtaining competitive bids for the contract?
 (3) If the City of Conway does not obtain competitive bids for its ambulance service, and the city council authorizes the mayor to enter an agreement for an exclusive franchise between the City of Conway and the Conway Regional Medical Center, but the mayor refuses to sign the agreement, is the agreement valid?
RESPONSE
Question 1 — Is the City of Conway required to obtain competitive bidsfor exclusive franchises for ambulance service within its corporatelimits?
It is my opinion, as explained more fully below, that the City of Conway is required to employ some competitive procurement method to solicit ambulance franchise applications.[1]
Municipalities are authorized by the Municipal Ambulance Licensing Law to license and regulate the provision of emergency and non-emergency medical service.[2] That law imposes the following competition-related requirement upon municipalities in connection with their contracts for ambulance service:
 (b) The cities shall also have the right and power to franchise, exclusively or otherwise, emergency medical services, ambulances, ambulance companies, their related properties, facilities, equipment, personnel, and any and all aspects attendant to providing emergency medical services and ambulance operations within the cities, whether or not owned and operated by the city.
 (c) In the event an exclusive franchise is issued, the process employed in the issuance shall provide periodic opportunity for competitive solicitation of ambulance franchise applications.
A.C.A. § 14-266-107(b) and (c) (emphasis added).
The legislature's intent with regard to the role of competition in the provision of ambulance service is reflected in the section of the Municipal Ambulance Licensing Law entitled "Legislative determination." That section states:
 (b)(1) It is further legislatively determined that emergency medical services and ambulance operations, when subjected to competitive practices of multiple companies simultaneously serving the same city, operate under precarious financial conditions and that this type of competition is harmful to the health, safety, and welfare of residents of the state.
 (2) However, it is also legislatively determined that periodic competition among companies for the right to provide ambulance services offers a safe and effective means of encouraging fair and equitable private-sector participation.
 (3) Therefore, in order to ensure the availability of state-of-the-art advanced life-support systems and ambulance systems, the General Assembly specifically delegates and grants to cities of the first class and second class the right and power to contract exclusively or otherwise, using competitive procurement methods, for the provision of emergency medical services and ambulance services for the city and to provide continuing supervision of those services.
A.C.A. § 14-266-102(b)(1)(2) and (3).
The above-quoted sections of the Municipal Ambulance Licensing Law unambiguously require that if a city intends to grant an exclusive franchise for emergency medical service, it must employ some method of soliciting competitive applications for that franchise. In the absence of an ambiguity, statutory language should be interpreted just as it reads.Cheqnet Systems v. State Bd. of Collection Agencies, 319 Ark. 252,890 S.W.2d 595 (1995).
I must therefore conclude that municipalities are required to obtain competitive applications for an exclusive ambulance service franchise.
Question 2 — If so, what are the procedures the city should follow inobtaining competitive bids for the contract?
It is my opinion that the city has the authority to determine the procedure that must be followed in obtaining competitive applications for an exclusive ambulance franchise.
I base this conclusion on the very broad scope of the authority that is granted to municipalities to license and regulate ambulance service, and upon the fact that the legislature did not establish a procedure to be followed. Not only does the statute specifically state that the General Assembly "delegates" to cities the power to contract for ambulance service using competitive procurement methods, see A.C.A. §14-266-102(3), but cities are also granted the authority to enact rules and regulations with regard to the regulation of such service. See
A.C.A. § 14-266-105(a)(1). Moreover, the legislature specifically described the municipalities' authority in this area as "broad authority regarding emergency and nonemergency medical services." See A.C.A. § 14-166-102(c).
Because of this broad authority that has been expressly delegated to the municipalities regarding ambulance service, and because the legislature chose not to establish a procedure for cities to follow, I conclude that it was the intent of the legislature to allow municipalities to determine and choose a "competitive procurement method" for the solicitation of ambulance franchise applications.
Question 3 — If the City of Conway does not obtain competitive bids forits ambulance service, and the city council authorizes the mayor to enteran agreement for an exclusive franchise between the City of Conway andthe Conway Regional Medical Center, but the mayor refuses to sign theagreement, is the agreement valid?
I am unable to respond to this question. A thorough and accurate response would require not only familiarity with all of the facts and circumstances surrounding the authorization of the agreement in question and the mayor's refusal to sign it, but also a review and analysis of the agreement itself. The Attorney General's office is not authorized to conduct factual analyses or to construe the provisions of contracts. I would therefore advise that this question be directed to the attorneys for the interested parties.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] However, it is not my opinion that the city is required to comply with the bidding requirements that are set forth in A.C.A. § 14-58-303. Whereas municipalities are generally required by that statute to obtain competitive bids for the purchase of goods and services that will cost the city more than $10,000.00, see A.C.A. § 14-58-303, this bidding requirement does not apply to services for which the city is not required to pay. It is my understanding that the City of Conway's contract for ambulance service does not entail the city itself paying for the service. Accordingly, this opinion might reach a different conclusion with regard to the applicability of A.C.A. § 14-58-303 to a situation involving a contract for ambulance service under which the city was required to pay $10,000.00 or more.
[2] It should be noted that this office has previously opined that the grant of an exclusive franchise for non-emergency medical service would likely constitute a violation of federal anti-trust law. See Op. Att'y Gen. No. 87-474, a copy of which is attached. This conclusion does not apply to exclusive franchises for emergency medical service, because such franchises have been explicitly authorized by statute. See A.C.A. §14-266-107.